UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

491 BERGEN ST. CORPORATION, et al.,

                    Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ESTATE OF FRANK SOFIA,

                    Appellant,

              -against-

139-141 FRANKLIN ST. REALTY CORP.,

                    Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 10/6/25

25-cv-4387 (LAK)

[No. 25-B-10091 (DSJ)]
[Jointly Administered]

## MEMORANDUM OPINION

Appearances:

         Dani Schwartz
         David Seth Yohay
         Joyce A. Kuhns
         OFFIT KURMAN, P.A.
         *Attorneys for Appellant Estate of Frank Sofia*

         Tracy L. Kleistadt
         Christopher John Reilly
         Andrew Brown
         KLESTADT, WINTERS, JURELLER, SOUTHARD &
         STEVENS LLP

         John Giardino
         Gozde Kabadayi
         PRYOR CASHMAN LLP

         *Attorneys for Appellee 139-141 Franklin St. Realty Corp.*

2

LEWIS A. KAPLAN, *District Judge.*

   "The kitchen is my closet" and "I'm a New Yorker; my oven is used for storage"[1] may strike out-of-towners as peculiar.  But these refrains sound perfectly reasonable to many residents of a City where space is a premium.  Little wonder, then, that ownership of self-storage businesses within the five boroughs is a lucrative proposition.

   For over a century, the Sofia family reaped the benefits of such businesses.  But upon the death of one Frank Sofia, bitter conflict ensued, leading to state court litigation and a judgment totaling more than $57 million (the "Judgment") in favor of the Estate of Frank Sofia (the "Frank Estate") against  six self-storage rental businesses (the "Corporations") in which Frank was a shareholder.  After entry of the Judgment, the Corporations declared bankruptcy and arranged to sell off their assets.  Before the Court is the Frank Estate's appeal of an order of the bankruptcy court regarding the Estate's claim to entitlement to sums from the sale of the assets of one of the Corporations, 139-141 Franklin St. Realty Corp. (the "Franklin Debtor").

### Facts and Procedural Posture

I.  *Sofia Brothers Dispute*

   In 1986, three Sofia brothers — Frank, John, and Leonard — entered into six substantially identical shareholders' agreements.  Those agreements respectively governed the six Corporations, each of which operated a self-storage rental business in New York City.[2]  After Frank

---

[1]   *See, e.g.*, Alexis Swerdloff, *The Kitchen is my Closet*, N.Y. Post (Mar. 30, 2010).

[2]   *See In re 491 Bergen St. Corp.*, No. 25-B-10091 (Bankr. S.D.N.Y.) (hereinafter "Bankr. Dkt"), Dkt 88-1 at 10–64.

passed away in 2022, the Frank Estate demanded, as the shareholders' agreements contemplated, that the other brothers buy out Frank's shares of the Corporations and commenced arbitration to compel the purchase of these shares.

In September 2024, the arbitrator issued an award to the Frank Estate of $57,145,000 plus $16,982.25 in arbitration costs, plus interest.[3]  Of that total, the Franklin Debtor was liable for $16,667,000, plus interest on that amount.  The award was confirmed by entry of the Judgment in New York State court.[4]  The Judgment provides that the Estate "shall surrender its stock interest in the Corporations" upon payment to the Frank Estate of all sums required therein.[5]

## II.    Bankruptcy Court Proceedings

In January 2025, each of the Corporations filed a petition under Chapter 11 of the Bankruptcy Code.[6]  Shortly thereafter, the Bankruptcy Court ordered the joint administration of the Corporations' respective Chapter 11 cases.[7]  Two months later, the Franklin Debtor filed its proposed plan of liquidation, whereby it would pay the sum it owed to the Frank Estate under the Judgment with the proceeds of the sale of property at 139-141 Franklin Street (the "Franklin

---

[3]     Id. at 65–92.

[4]     Id. at 93–99.

[5]     Id. at 99.

[6]     Bankr. Dkt 1.

[7]     Bankr. Dkt 5.

Property"), thereby extinguishing the Frank Estate's shareholder interest.[8]

The Frank Estate objected to the proposed plan.[9]  As a shareholder in the Franklin Debtor, the Frank Estate was entitled to one-third of the proceeds from the Franklin Property remaining after payment of allowed administrative expenses and claims ("residual sale proceeds"). Under the proposed plan, that entitlement would have been extinguished by the payment of the $16,667,000 (plus interest) owed to the Estate by the Franklin Debtor per the Judgment.  The Frank Estate contended that its shareholder interest should be extinguished only upon the payment of the entire Judgment amount — i.e., $57,145,000 (plus interest and costs) not just the $16,667,000 (plus interest) owed to it by the Franklin Debtor.  Thus, in the view of the Frank Estate, it should be entitled to a portion of residual sale proceeds until the entire Judgment amount was paid.[10]

On May 1, 2025, the Bankruptcy Court overruled the Frank Estate's objection and confirmed the plan of liquidation.[11]  The Frank Estate appealed.  After unsuccessfully moving in the Bankruptcy Court for a stay of the confirmation order pending appeal, the Frank Estate moved this Court for such a stay.[12]  On June 23, 2025, the Court granted the stay and ordered that the Franklin Debtor pay one-third of any residual proceeds from the sale of the Franklin Property into the

---

[8]     Bankr. Dkt 47.

[9]     Bankr. Dkt 88.

[10]    Bankr. Dkt 88.

[11]    Bankr. Dkt 108.

[12]    Dkt 4.

Registry Fund of this Court, there to abide the event.[13]

On June 27, 2025, the Bankruptcy Court confirmed the plan of liquidation for the remaining five Corporations over the objection of the Frank Estate.[14]  That confirmation order is subject to a separate appeal filed in this Court by the Frank Estate,[15] which is stayed pending resolution of this appeal.[16]

### III.    Payment of Judgment Total

On March 13, 2025, the Frank Estate's counsel emailed the Corporations' counsel stating, "[T]he state court judgment awards the Frank Sofia Estate, among other sums, the principal amount of $16,982.25 (one-half of the arbitration fees)."[17]  That amount was wired to the Frank Estate the same day.[18]  There was no mention in that correspondence — or any subsequent correspondence on or prior to July 15 — of any obligation of the Corporations to pay interest on that amount.

On June 26, 2025, the Corporations' counsel asked the Frank Estate to provide payment amounts due under the Judgment, including principal and interest, and wire transfer

---

[13]    Dkt 9.

[14]    Bankr. Dkt 167.

[15]    *In re 491 Bergen St. Corp.*, No. 25-cv-6091 (LAK) (S.D.N.Y., filed July 24, 2025).

[16]    Dkt 42.

[17]    Dkt 22-5.

[18]    Dkt 22-6.

instructions.[19]  On June 30, 2025, the Frank Estate's counsel replied (the "June 30 Letter") providing

its calculations for the amount owed along with wire transfer instructions.[20]  The June 30 Letter did

not mention any shortfall with respect to the principal amount of arbitration costs — which was

transferred to the Estate on March 13 — or unpaid interest on those costs that had accrued since the

entry of the Judgment.  Although the June 30 Letter included a generic reservation of "the right to

amend, modify, and/or correct any on the above calculations in the event of error,"[21] the letter did

not reserve any right to claim that the Estate was owed additional, unspecified categories of funds

— such as interest on arbitration costs.

   After additional back and forth, the correspondence culminated in an email from the

Frank Estate's counsel (the "July 15 Email") stating that the principal owed under the Judgment was

$57,145,000, the interest on that principal was $9,035,955.27 as of that date, and thus the total

Judgment amount was $65,790,955.27.[22]  Like the June 30 Letter, the July 15 Email did not refer

to any shortfall related to interest on arbitration costs.  The Corporations' counsel replied to the July

15 Email stating, "We accept your calculation below.  We are arranging the payoffs."[23]  After the

Frank Estate's counsel followed up to ask what time the wires would be sent,[24] $65,790,955.28 was

---

19  Dkt 22-11.

20  Dkt 22-12.

21  *Id.* at 2.

22  Dkt 22-15.

23  *Id.*

24  Dkt 24 at 178.

wired to the Frank Estate.[25]

The Franklin Debtor contends that its payment of $65,790,955.28 to the Frank Estate extinguished the Estate's equity interest in the Franklin Debtor, thereby eliminating the Estate's entitlement to residual sale proceeds.  The Frank Estate argues that the payment did not satisfy the Judgment because it did not include interest on the arbitration costs to which it allegedly was entitled — a total of $803.94 as of August 12, 2025,[26] or 0.001% of the Judgment total.

## *Discussion*

### I.    *Mootness*

Before turning to the merits, the Court has an independent duty to confirm all aspects of its subject matter jurisdiction, including mootness.[27]  "Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies; a case is moot if 'the parties lack a legally cognizable interest in the outcome' of the case."[28]

The Frank Estate's "cognizable interest in the outcome" of this appeal is its purported entitlement to residual sale proceeds from the sale of the Franklin Property.  The Franklin Debtor argues that the Estate would not be entitled to those proceeds even if it prevailed on the appeal because the full payment of the Judgment liquidated the Frank Estate's equity interest.

---

[25]

See Dkt 16-1.

[26]

Dkt 29 at 17.

[27]

*Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025).

[28]

*In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010) (quoting *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994)).

Whether this appeal is moot therefore turns on whether the full amount required by the Judgment has been paid to the Frank Estate. Both sides agree that the principal amount of the Judgment (exclusive of arbitration costs) is $57,145,000, that the interest owed on that principal, as of July 15, 2025, is $9,035,955.27, and that the principal amount of the arbitration costs owed to the Frank Estate is $16,982.25. Both sides agree also that those amounts have been paid to the Frank Estate.

They do not dispute meaningfully that the Judgment entitles the Frank Estate also to interest on arbitration costs — approximately $800 — and that this amount has *not* been paid to the Frank Estate. Based on this shortfall, the Frank Estate contends that its shareholder interest was not extinguished and its entitlement to residual sale proceeds survives. In effect, the Frank Estate seeks to leverage the approximately $800 shortfall in payment to secure millions of dollars in residual sale proceeds from the Franklin Debtor and the other Corporations.[29] In reply, the Franklin Debtor argues that the Frank Estate is equitably estopped from arguing that the Judgment has not been paid in full. The Court assesses the applicability of equitable estoppel first before turning to the related doctrine of waiver.

## II.    *Equitable Estoppel*

"The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. The law imposes the doctrine as a

---

[29]    The total amount of residual sale proceeds from the sale of the Franklin Property and properties belonging to the other Corporations is not clear on the present record. Before the Bankruptcy Court, the Frank Estate estimated that it could be entitled to as much as $6 million in such proceeds. Bankr. Dkt 169 at 93:24–94:5.

matter of fairness. Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position."[30]

"Under New York law, the party asserting estoppel must show that the party alleged to be estopped '(1) engaged in conduct which amounts to a false representation or concealment of material facts; (2) intended that such conduct [would] be acted upon by the other party; and (3) knew the real facts.' In addition, the party alleging estoppel must also 'show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position.'"[31]

Here, the Franklin Debtor argues that the Frank Estate is equitably estopped from asserting that the Judgment has not been paid in full. It asserts, with good reason, that (1) correspondence from the Frank Estate — including the June 30 Letter and the July 15 Email — concealed the fact that the Franklin Debtor owed interest in arbitration costs to the Estate, (2) the Frank Estate intended that the Franklin Debtor would rely upon the Judgment total provided in the July 15 Email ($65,790,955.27) in determining the amount to transfer to the Estate, and (3) the Frank Estate had at least constructive knowledge of the real facts, *i.e.*, that the Franklin Debtor owed the interest on arbitration costs in addition to the $65,790,955.27.

Nevertheless, the Franklin Debtor may not invoke equitable estoppel because it did

---

30      *Shondel J. v. Mark D.*, 7 N.Y.3d 320, 326 (2006). The parties agree that New York law applies here. *See* Dkt 21 at 22; Dkt 24 at 6.

31      *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301–02 (2d Cir. 1996) (cleaned up) (quoting *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81 (4th Dept. 1980)). The parties agree that New York law applies here. *See* Dkt 21 at 22; Dkt 24 at 6.

not lack knowledge of the fact that the Judgment required it to pay interest on arbitration costs. Equitable estoppel "may not be invoked where both parties possess the same knowledge and information."[32] Moreover, "constructive notice afforded by public records or otherwise prevents one from asserting an estoppel."[33] Here, the Franklin Debtor knew the terms of the Judgment to the same extent as the Frank Estate, and the Franklin Debtor's constructive notice of those terms prevents it from asserting estoppel against the Frank Estate.

Accordingly, equitable estoppel does not apply here.[34]

---

[32]

*Endicott Johnson Corp. v. Bade*, 42 A.D.2d 236, 239 (3d Dept. 1973); *see also Hotel 57 L.L.C. v. Tyco Fire Prods.*, 59 A.D.3d 305, 306 (1st Dept. 2009) (no equitable estoppel where the "plaintiff had in its possession . . . all the [necessary] information").

[33]

57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 38 (May 2025 Update) (footnote omitted).

[34]

The Court acknowledges that the Bankruptcy Court arrived at a different conclusion in its order authorizing disbursement of certain funds held in reserve. *See* Bankr. Dkt 211 at 11–13.

The Bankruptcy Court previously had held $6 million in reserve to secure the Frank Estate's claim of entitlement to residual sale proceeds from the sales of properties belonging to the Corporations. Bankr. Dkt 167 at ¶ 9. Following the payment of $65,790,955.28 to the Frank Estate, the Bankruptcy Court authorized disbursement of the reserve and ruled that the Frank Estate was equitably estopped from asserting its entitlement to residual sale proceeds. The Bankruptcy Court held also that this and the related appeal cited above did not divest it of jurisdiction.

The Bankruptcy Court's ruling rested on the finding that the Corporations "were evidently not aware that the Frank Estate would not accept a full payment of the 'judgment payoff amount' it agreed to as a complete satisfaction of the Judgment." Bankr. Dkt 211 at 13. But the Corporations had constructive knowledge of the actual amount due under the Judgment to the same extent as the Frank Estate. The Bankruptcy Court's ruling seems to have regarded the amount that the Frank Estate would accept as discharge of the Judgment — rather than the actual amount due — as the "true fact" at issue. But whether and to what extent the Frank Estate communicated its intent to forego its entitlement to any additional amounts pursuant to the Judgment is not an exogenous "material fact" that the Frank Estate misrepresented or concealed. Rather, that question should be analyzed through the prism of waiver. *See Waldman v. Cohen*, 125 A.D.2d 116, 122 (2d Dept. 1987) ("Although waiver and estoppel are sometimes used interchangeably, a waiver is an intentional abandonment

## III.    Waiver

"A waiver is the voluntary abandonment or relinquishment of a known right."[35] "Waiver is usually a matter of intention as indicated by the language or conduct, and knowledge, actual or constructive, of the existence of the right or condition alleged to have been waived is an essential prerequisite to its relinquishment."[36] "Although waiver and estoppel are sometimes used interchangeably, a waiver is an intentional abandonment of a right without need to show reliance or detriment to the asserting party . . . ."[37]

The Frank Estate's entitlement under the Judgment to interest on arbitration costs is subject to waiver.[38] The Frank Estate indisputably had constructive notice of that right.[39] Whether the right has been waived turns on whether the Frank Estate sufficiently demonstrated an intent to waive that right.

"[W]aiver is not created by negligence, oversight, or thoughtlessness, and cannot be

---

of a right without need to show reliance or detriment to the asserting party, while estoppel is an equitable doctrine wherein a party is induced to act in reliance of the conduct of the other party, to his detriment.").

[35]    *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York*, 61 N.Y.2d 442, 446 (1984).

[36]    *In re City of Rochester*, 208 N.Y. 188, 197 (1913).

[37]    *Waldman*, 125 A.D.2d at 122.

[38]    *See Peck v. Peck*, 232 A.D.2d 540, 540 (2d Dept. 1996) ("[A] party may waive his or her rights under an agreement or decree . . . ."); 57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 87 ("Parties may waive their rights under a decree . . . .").

[39]    *See* Dkt 21 at 22 (Frank Estate conceding that "[c]onstructive notice [that interest on the arbitration costs was due under the Judgment] was provided by the entry of the Judgment").

inferred from mere silence. Waiver requires proof of a voluntary and intentional relinquishment of a known and otherwise enforceable right."[40]  "A waiver . . . may be accomplished by express agreement or by such conduct or failure to act as to evince an intent not to claim the purported advantage."[41]

Here, there was extensive correspondence between the parties regarding the total owed under the Judgment and arranging for the payment of that total.  As set forth above, the June 30 Letter and July 15 Email affirmatively represented the Judgment amount to which the Frank Estate asserted its entitlement.  The determination of that amount was the product of calculation and correspondence over two weeks by sophisticated parties.  There is no evidence of duress or coercion. Taken together, this correspondence demonstrates (1) the Frank Estate's clear intent to accept $65,790,955.27 as full satisfaction of the Judgment, and (2) that the Frank Estate's relinquishment of any entitlement to additional categories of payments pursuant to the Judgment was voluntary and intentional.

The Frank Estate argues that it was merely "silen[t] as to the unpaid interest" and had no obligation to "take [the Corporations] by the hand and guide them through all steps and payments necessary to satisfy the Judgment."[42]  This argument is disingenuous at best.  The Frank Estate was not silent — it affirmatively stated the amount it believed it was owed under the Judgment and presented calculations in support. While it was not obligated to "take [the Corporations] by the hand and guide them," it voluntarily exchanged numbers with the Corporations with the knowledge that

---

[40]    *Peck*, 232 A.D.2d at 540 (citations omitted).

[41]    *Hadden v. Consol. Edison Co. of New York*, 45 N.Y.2d 466, 469 (1978).

[42]    Dkt 21 at 24–25.

the agreed upon amount would be transferred to the Frank Estate.

Accordingly, the Frank Estate waived its right to collect additional moneys owed under the Judgment or, in the alternative, to assert that its equity interest in the Corporations has not been extinguished. The Frank Estate's equity interest in the Corporations has been liquidated, thus extinguishing its entitlement to any residual share proceeds. The appeal therefore is moot.

IV.     *Equitable Mootness*

The Franklin Debtor argues also that the appeal is equitably moot because its plan of liquidation has been substantially consummated. The mootness of this appeal having divested the Court of subject matter jurisdiction, the Court does not reach this alternate ground for dismissal.

### Conclusion

The appeal is dismissed as moot. The Court's order on the motion for stay pending appeal (Dkt 9) is vacated and the motion to vacate the stay (Dkt 16) is denied as moot.

SO ORDERED.

Dated:        October 6, 2025

_____
Lewis A. Kaplan
United States District Judge